## CIRCUIT COURT OF ARLINGTON COUNTY

Maria Morgan, an infant,
by her next friend,
Virginia Aribe, et al.

v.

Marymount University

January 26, 1990

Case No. (Law) 88-686

By JUDGE THOMAS R. MONROE

This is a personal injury action by a brain-damaged child injured in June, 1986, while attending Marymount Junior School, an elementary school operated by Marymount University. Marymount closed the Junior School in June, 1988. Marymount University has filed a Plea in Bar, now before this Court for resolution.

The Court, having considered the evidence offered with respect to the Plea in Bar of the defendant, Marymount University, raising the defense of charitable immunity, heard oral arguments on this issue and reviewed briefs submitted. Based upon the able arguments of counsel and the extensive memoranda filed, the Court is of the opinion that the Plea in Bar should be overruled.

No issue has been raised with respect to the selection or retention of employees, leaving only the determination of whether Marymount University is a charitable institution entitled to charitable immunity.

The Supreme Court of Virginia has not decided the applicability of the doctrine to colleges and universities. However, there is significant case law regarding such application to hospitals. In *Danville Community Hospital*

*v. Thompson*, 186 Va. 746 (1947), it was held that the question whether a hospital is charitable or otherwise is to be determined by two tests: (1) the powers and purposes set forth in its charter, and (2) the manner in which the school is conducted.

Marymount University is a private, Catholic, nonprofit, educational corporation owned by the Sisters of the Order of the Sacred Heart of Mary.

Marymount was originally incorporated in 1960 as Marymount College of Virginia. The purpose for the formation of the corporation was defined as: "the continuance of an educational institution to train young women to utilize their opportunities and advantages, through an integrated program of religious, intellectual, physical, and social activity, to help themselves and all mankind," and "to award diplomas and degrees to students who have completed the prescribed courses.

In 1986, subsequent to plaintiff's injury, Marymount amended its charter to convert itself from a woman's college into a co-ed university. Its purpose remained essentially identical to the purpose set forth in the original 1960 charter.

On November 9, 1987, the charter was amended re-defining Marymount's purpose as "exclusively for charitable, religious, educational, and scientific purposes." Authority to pay reasonable compensation for services rendered was included in the amendment. The university pays its officers, including nuns who have taken vows of poverty. However, trustees have historically not been paid. Payments to nuns for salaries go directly to their order.

A mixed question of law and fact is presented by the defendant's Plea in Bar. Defendant has the burden of proof by a preponderance of the evidence. The applicable criteria to be viewed in this light are set forth in *Memorial Hospital v. Oakes, Adm'x*, 200 Va. 878 (1959), and in *Danville Community Hospital v. Thompson, supra.*

Marymount charges tuition and ends the fiscal year with an excess of cash after expenditures. It funds its debt service out of the excess but has always had sufficient "profit" remaining to transfer into discretionary funds. In the past ten years, 1989 excluded, it has failed to show an excess of cash after expenses only once, in 1980, just prior to becoming a co-educational university.

Marymount University had no similar limitation in its charter, in effect at the time of plaintiff's alleged injuries, as contained in the Charter of Memorial Hospital, Inc., to be entitled to rely on the defenses of charitable immunity. In *Oakes*, the hospital's charter provided that it was formed *solely* for benevolent purposes, the hospital was operated at a loss for the five years preceding the suit, and it was so liberal about debt collection that it *wrote* off the $3,500.00 account of a patient whose husband had steady employment. *Memorial Hospital, Inc. v. Oakes*, 200 Va. 878 (1959).

The Court concludes that the charter in effect on the date of plaintiff's injury provided no indicia of the charitable nature of the university and no presumption of charitable operation arises therefrom. *Compare Oakes, supra* (charter provided hospital organized solely for benevolent purposes, not profit, expressly directing that all surplus over expenses be devoted to charitable and benevolent work held charitable) *and Danville Community Hospital, supra* (charter required net earnings after expenses to be reinvested for the growth and expansion of the hospital held not charitable).

Turning next to the method of operation of the University, the evidence discloses Marymount administers several financial aid programs for students, including a tuition payment plan which allows students to spread their tuition payments throughout the semester. Participants sign a promissory note providing for interest, late payment penalties, and payment of attorney's fees if the note remains unpaid and is referred for collection.

Some of the student loan programs are federal, and the federal government requires Marymount to bring legal action to collect unpaid balances. Three to five tuition payment plans have arrearages per term and have been turned over to its collection agency for enforcement. When students are in arrears, they are not permitted to re-enroll for further semesters and are refused issuance of transcripts.

Marymount sets annual tuition at an amount calculated to break even. The tuition takes into consideration anticipated contributions. The Junior School students paid a lower tuition than University students based solely on the cost of operating the Junior School, and it was calculated to break even. The Junior School did not have its

own endowments and did not benefit from contributions to the University. Any financial aid to Junior School students came from the fees of other Junior School students, not the University's financial aid program. The University engaged in no fund-raising for the Junior School.

This Court adopts the conclusion in plaintiff's findings of fact:

> As a matter of law, educational and religious institutions are not necessarily charitable. By definition, a charitable institution must have an eleemosynary purpose, that is, it must have as one of its purposes service to the poor and needy. An institution which utilizes tax-deductible contributions to meet the spiritual and/or educational needs of the people may be a great moral voice in the community; it may be a source of intellectual enlightenment and even of pride by those who benefit from its mission. But if its institutional purposes do not spell out a charitable objective apart from its purely educational and/or religious objectives, it is not a charitable institution. Furthermore, under the *Danville Community Hospital* test, merely calling itself charitable will not be sufficient to make an institution charitable if its actions do not manifest a *primarily* charitable purpose, even though it may in fact provide some charitable services. *See, Purcell v. Mary Washington Hospital*, 217 Va. 776 (1977).

The Court concludes that defendant has failed to carry its burden of proving that it is a charitable institution, entitled to immunity from tort claims.

Counsel for plaintiff should prepare an order overruling the Plea in Bar.